1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT
9          FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   STEVEN GOODMAN,                    )    No. C 06-03952 JW (PR)
                                        )
12              Petitioner,             )    ORDER DENYING PETITION FOR
                                        )    WRIT OF HABEAS CORPUS
13      vs.                             )
                                        )
14                                      )
     SUSAN FISHER, Warden,              )
15                                      )
                Respondent.             )
16   _____   )
17
18        Petitioner, a California prisoner proceeding pro se, filed a writ of habeas corpus
19   pursuant to 28 U.S.C. § 2254, challenging the February 2005 decision of the California
20   Board of Parole Hearings ("Board") finding petitioner unsuitable for parole.  The Court
21   ordered respondent to show cause why the petition should not be granted.  Respondent
22   filed an answer, and petitioner filed a traverse.
23
24                         **PROCEDURAL BACKGROUND**
25        In January 1993, petitioner was convicted of second degree murder and was
26   sentenced to fifteen years-to-life.  On February 2, 2005, petitioner was denied parole
27   by the Board for the second time.  On September 1, 2005, petitioner filed a habeas
28   petition in the state superior court, which denied the petition in a reasoned opinion on

1  October 27, 2005.  On November 29, 2005, petitioner filed a petition in the California

2  Court of Appeal, which summarily denied review on February 8, 2006.  On February

3  15, 2006, petitioner filed a petition for review with the California Supreme Court,

4  which summarily denied review on April 12, 2006.  Petitioner filed the instant federal

5  petition on June 26, 2006.

6

7  **FACTUAL BACKGROUND**

8  A.    The Commitment Offense

9       The following summary of facts is taken from the unpublished opinion of the

10  California Court of Appeal denying petitioner's direct appeal[1]:

11       At approximately 9 p.m. on May 5, 1992, Ralph Canez was
     driving his car on Broadway in the City of Santa Maria when he noticed
12  a blue car, driven by [petitioner] weaving in and out of traffic at
     approximately 70 miles per hour.  Canez saw the blue car "rear end" a
13  lawfully stopped Chevrolet truck occupied by Gilbert Martinez Sr. and
     his family.  The impact was horrific and deadly.  Mr. and Mrs. Martinez
14  and their five-year-old son, Gilbert Jr., suffered physical injuries as a
     result of the collision.  Their baby daughter, Ashley, four-and-one-half
15  months old, died as a result of the collision.
         [Petitioner] was extricated from his car and taken to the hospital.
16  Officer Gregory Carroll, of the Santa Maria Police Department, noticed
     that [petitioner] displayed the classic symptomology of a person under
17  the influence of alcohol, i.e., slurred speech and the odor of alcohol
     emanating from his breath.  When Officer Carroll asked [petitioner]
18  how much he had to drink, [appellant] admitted that he had been
     drinking and said: "Most people tell you two or three." [Petitioner]
19  asked if anyone had been hurt and Carroll responded affirmatively.
     [Petitioner] prophetically said: "They'll sue my ass.  What if I killed a
20  kid?"  A blood sample was drawn from [petitioner] and analyzed to
     contain .33 percent alcohol by weight.
21       [Petitioner] had previously been convicted in the San Luis
     Obispo Municipal Court of driving under the influence.  As a result of
22  this conviction, [petitioner] was required to see the video, "Red
     Asphalt."  The video was graphic and portrayed the bloody reality of
23  "drunk drivers" on highways.  [Petitioner] also participated in an
     educational program concerning the dangers of driving under the
24  influence of alcohol.
         Donald Patterson, M.D., a psychiatrist, testified about people
25  who are dependent on alcohol and their awareness of the dangers
     associated with drinking  and driving.  Even when such a person has
26  been drinking, he or she still appreciates the danger.  Doctor Patterson
     opined that such a person could have a high blood alcohol level and still
27

28  [1] People v. Goodman, No. SM76986, slip op. at 2-4 (April 13, 1994) (Resp't Ex. D).

have the mental state required for "implied malice."

      [Petitioner] testified that he had been a chronic drinker since the early 1970's.  He had lost his job and marriage due to alcohol consumption.  Prior to the collision, he was drinking "easily" a fifth of alcohol a day. [Petitioner] drank excessively on May 5, 1992.  He professed no recollection of the collision and claimed that he did not know that he was creating a danger by driving.

      The defense theorized that [petitioner's] unawareness of the danger was shown by the fact that he gave his son a ride prior to the collision.  Doctor Joseph Frawley, M..D. and Chief of Staff at the Schick Shadel Hospital opined that a person driving erratically with a blood alcohol level of .33, as [petitioner] was, would not appreciate the risk created.

B.   <u>Parole Suitability Hearing</u>

On February 2, 2005, petitioner appeared with counsel before the Board for his second parole suitability hearing.  (Resp't Ex. E at 1-2.)  The Board first reviewed petitioner's pre-commitment record and noted that in 1990, he was arrested, convicted for driving under the influence (DUI) and sent to a DUI first offender program.  (<u>Id.</u> at 14.)  He violated the terms of his probation and was sent back to the program.  (<u>Id.</u> at 14-17.)  Subsequently, petitioner was arrested three times for being drunk in public: once in 1991 and twice in 1992.  (<u>Id.</u> at 17-18.)  In 1991, petitioner was sent to and completed alcohol diversionary treatment.  (<u>Id.</u>)  In 1992, petitioner was convicted, ordered to take antabuse and to enter an alcohol treatment program.  (<u>Id.</u> at 18.)  He took the antabuse and entered the alcohol treatment program.  (<u>Id.</u>)

The Board then looked at petitioner's post-commitment record and noted that petitioner had remained free of disciplinary violations.  (<u>Id.</u> at 34.)  Petitioner presented evidence that he had availed himself of many alcohol treatment programs, self-improvement, and community programs in prison.  (<u>Id.</u> at 40-48.)  Moreover, petitioner completed an upholstery class in prison.  (<u>Id.</u> at 38.)  Petitioner's psychological report indicated that petitioner had been disciplinary-free in prison, had a good work record, and was below average in his level of dangerousness.  (<u>Id.</u> at 49.)  His primary risk factor was alcohol and he would need daily alcohol treatment for the rest of his life.  (<u>Id.</u>)  Regarding his parole plans, petitioner told the Board that if he was found suitable for parole, he would live at his house with his son, work a minimum wage job at

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.JW\HC.06\Goodman3952_denyHC-parole.wpd

Foster's Body and Paint where he received a job offer, and attend alcohol treatment programs.  (<u>Id.</u> at 49, 54, 57.)  The board noted that petitioner received twenty five letters of support, including a letter from his son stating that he had a room ready for petitioner and that he had a job to support him; a letter from his cousin that he would provide petitioner with housing and financial support; and a letter from his soon-to-be mother in law providing him with housing.  (<u>Id.</u> at 54-55.)  Petitioner also received letters from various individuals stating that they would provide him with food and shelter.  (<u>Id.</u> at 55.)  One couple also volunteered to help petitioner with job placement.  (<u>Id.</u>)  In addition, petitioner received two job offers, one from Heritage Cabinets and the other from Foster's Body and Paint.  (<u>Id.</u> at 54-55.)

The Board then heard closing statements from counsel for petitioner in favor of parole, and from petitioner himself explaining his parole eligibility.  (<u>Id.</u> at 58-61.)  There was no opposition to parole.  The Board then took a recess before rendering its decision finding petitioner unsuitable for parole.  (<u>Id.</u> at 62-68.)

## DISCUSSION

### A.    <u>Standard of Review</u>

Because this case involves a federal habeas corpus challenge to a state parole eligibility decision, the applicable standard is contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  <u>McQuillion v. Duncan</u>, 306 F.3d 895, 901 (9th Cir. 2002).  Under the AEDPA, a district court may not grant habeas relief unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d);  <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).  A federal court must presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).

1    Where, as here, the highest state court to reach the merits issued a summary

2  opinion which does not explain the rationale of its decision, federal court review under

3  § 2254(d) is of the last state court opinion to reach the merits.  Bains v. Cambra, 204

4  F.3d 964, 970-71, 973-78 (9th Cir. 2000).  In this case, the last state court opinion to

5  address the merits of petitioner's claim is that of the state superior court.

6  **B.**     **Analysis of Legal Claims**

7    Petitioner claims that he was denied due process because the Board's decision

8  finding him unsuitable for parole relied on the commitment offense and was not

9  supported by "some evidence" that he would pose an unreasonable risk of danger to

10  society or a threat to public safety if released from prison.  (Pet. at 15.)

11    Respondent argues that California inmates do not have a federally protected

12  liberty interest in parole release.  (Resp't at 6.)  However, the Ninth Circuit has held

13  that California prisoners have a constitutionally protected liberty interest in release on

14  parole, and therefore they cannot be denied a parole date without adequate procedural

15  protections necessary to satisfy due process.  See Irons v. Carey, 505 F.3d 846, 850

16  (9th Cir. 2007).  The Supreme Court has clearly established that a parole board's

17  decision deprives a prisoner of due process if the board's decision is not supported by

18  "some evidence in the record," or is "otherwise arbitrary."  Sass v. California Bd. of

19  Prison Terms, 461 F.3d 1123, 1129 (9th Cir. 2006) (adopting "some evidence"

20  standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445,

21  454-55 (1985)).  The "some evidence" standard identified in Hill is clearly established

22  federal law in the parole context for AEDPA purposes.  Sass, 461 F.3d at 1128-29.

23  Additionally, the evidence underlying the board's decision must have some indicia of

24  reliability.  McQuillion, 306 F.3d at 904; Jancsek v. Oregon Bd. of Parole, 833 F.2d

25  1389, 1390 (9th Cir. 1987).  Accordingly, if the board's determination of parole

26  suitability is to satisfy due process, there must be some evidence, with some indicia of

27  reliability, to support the decision.  Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir.

28  2005); McQuillion, 306 F.3d at 904.

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.JW\HC.06\Goodman3952_denyHC-parole.wpd

1   Recently, the Ninth Circuit reheard en banc the panel decision in <u>Hayward v.</u>

2   <u>Marshall</u>, 512 F.3d 536 (9th Cir. 2007), <u>reh'g en banc granted</u>, 527 F.3d 797 (9th Cir.

3   2008), which presented a state prisoner's due process habeas challenge to the denial of

4   parole.  The panel had concluded that the gravity of the commitment offense had no

5   predictive value regarding the petitioner's suitability for parole and held that because

6   the Governor's reversal of parole was not supported by some evidence, it resulted in a

7   due process violation.  512 F.3d at 546-47.  The Ninth Circuit has not yet issued an en

8   banc decision in <u>Hayward</u>.  Unless or until the en banc court rules otherwise, the

9   holdings in <u>Biggs v. Terhune</u>, 334 F.3d 910, 916 (9th Cir. 2003), <u>Sass</u>, and <u>Irons</u> are

10   still the law in this circuit.

11   When assessing whether a state parole board's suitability determination was

12   supported by "some evidence," the Court's analysis is framed by the statutes and

13   regulations governing parole suitability determinations in the relevant state.  <u>Irons</u>, 505

14   F.3d at 850.  Accordingly, in California, the Court must look to California law to

15   determine the findings that are necessary to deem a prisoner unsuitable for parole, and

16   then must review the record in order to determine whether the state court decision

17   constituted an unreasonable application of the "some evidence" principle.  <u>Id.</u>

18   California law provides that a parole date is to be granted unless it is determined

19   "that the gravity of the current convicted offense or offenses, or the timing and gravity

20   of current or past convicted offense or offenses, is such that consideration of the public

21   safety requires a more lengthy period of incarceration . . . ."  Cal. Penal Code §

22   3041(b).  The California Code of Regulations sets out the factors showing suitability or

23   unsuitability for parole that the Board is required to consider.  <u>See</u> 15 Cal. Code Regs.

24   tit. 15 § 2402(b).  These include "[a]ll relevant, reliable information available," such

25   as:

26   . . . the circumstances of the prisoner's social history; past and present
    mental state; past criminal history, including involvement in other criminal
27   misconduct which is reliably documented; the base and other commitment
    offenses, including behavior before, during and after the crime; past and
28   present attitude toward the crime; any conditions of treatment or control,

including the use of special conditions under which the prisoner may
safely be released to the community; and any other information which
bears on the prisoner's suitability for release.  Circumstances which taken
alone may not firmly establish unsuitability for parole may contribute to a
pattern which results in finding of unsuitability.

Id.

Circumstances tending to show unsuitability for parole include the nature of the

commitment offense and whether "[t]he prisoner committed the offense in an

especially heinous, atrocious or cruel manner."  Id. at § 2402(c).  This includes

consideration of whether "[t]he offense was carried out in a dispassionate and

calculated manner," whether the victim was "abused, defiled or mutilated during or

after the offense," whether "[t]he offense was carried out in a manner which

demonstrated an exceptionally callous disregard for human suffering," and whether

"[t]he motive for the crime is inexplicable or very trivial in relation to the offense."  Id.

Other circumstances tending to show unsuitability for parole are a previous record of

violence, an unstable social history, previous sadistic sexual offenses, a history of

severe mental health problems related to the offense, and serious misconduct in prison

or jail.  Id.

Conversely, circumstances tending to support a finding of suitability for parole

include: no juvenile record; a stable social history; signs of remorse; that the crime was

committed as a result of significant stress in the prisoner's life; a lack of criminal

history; a reduced possibility of recidivism due to the prisoner's present age; that the

prisoner has made realistic plans for release or has developed marketable skills that can

be put to use upon release; and that the prisoner's institutional activities indicate an

enhanced ability to function within the law upon release.  See id. at § 2402(d).

In making its determination, the Board analyzed numerous factors weighing for

and against suitability for parole.  The Board began by reviewing the commitment

offense and determined that the offense "was carried out in a manner that demonstrates

an exceptionally callous disregard for human suffering."  (Resp't Ex. E at 63.)  Further,

the Board noted that petitioner had a "unstable social history and prior criminality"

involving a pattern of alcohol abuse that started in 1990. (<u>Id.</u> at 63-64.) Nevertheless, he decided to drive under the influence and caused a tragic accident, which is the basis of the case at hand. (<u>Id.</u> at 63.) "[This] shows a pattern of behavior that disregards the impact of [petitioner's] choices on other people." (<u>Id.</u> at 64.) The Board concluded that, given petitioner's history of alcohol abuse and prior arrests for alcohol abuse, petitioner "hasn't yet sufficiently participated in beneficial self-help." (<u>Id.</u>)

With respect to suitability factors, the Board noted that petitioner had never received a disciplinary report and his psychological evaluation was favorable. (<u>Id.</u>) Additionally, petitioner had very good parole plans and good community support. (<u>Id.</u> at 65.) He participated in several self-help programs, including Alcoholics Anonymous, Project Change, Impact, and Victims Offenders Reconciliation Group. (<u>Id.</u>) Further, he paid restitution to the victim's family in a very timely manner. (<u>Id.</u>) However, the Board determined that the factors tending to show suitability were outweighed by factors showing unsuitability and denied parole.

The state superior court reviewed the Board's decision and found that while petitioner had been making "continued progress during the period of his incarceration and [since his last parole hearing]," the Board properly based its decision on petitioner's history of alcohol abuse and its "experience and judgment in considering the probable effect of the stresses and temptations of a less structured setting outside the prison system." (Resp't Ex. H at 1-3.) The state court rejected petitioner's claim, concluding that the Board made an "individualized assessment," and that some evidence supported its decision. (<u>Id.</u> at 3.)

Petitioner argues that the state court's decision does not meet the some evidence standard and is an unreasonable interpretation of the facts because it based its decision on petitioner's alcoholism, but "[h]e has been sober for over [thirteen] years." (Trav. at 7-8.) He also argues that he is not an unreasonable risk of danger to society because "there is simply no evidence to show that [he] is likely to drink again." (<u>Id.</u> at 9.)

The Court recognizes that petitioner has made considerable progress in

maintaining sobriety, but it cannot be said that the state court was unreasonable in concluding there was some evidence to support the Board's decision that petitioner would pose a danger to society if released. First of all, it appears from the record that petitioner had not yet served the minimum number of years required under his fifteen years-to-life sentence at the time of the challenged parole suitability hearing.[2] Pursuant to <u>Irons</u>, petitioner's right to due process was not violated when he was deemed unsuitable for parole prior to the expiration of his minimum term. <u>See Irons</u>, 505 F.3d at 665. Furthermore, the Board's decision that petitioner was unsuitable for parole and that his release would unreasonably endanger public safety was supported by "some evidence" that bore "some indicia of reliability." <u>See</u> <u>Jancsek</u>, 833 F.2d at 1390. A review of the record shows that the Board relied on the circumstances of petitioner's commitment offense, his prior arrests and probation revocations for alcohol abuse, and the amount of time he spent in self-help and substance-abuse-free. (Resp't Ex. E at 62-64.) Although petitioner has been sober for over thirteen years, petitioner spent every one of these years in prison. As the state court pointed out, the Board decided that this was not ample time "to  fully internalize the need to abstain from alcohol" and recognized that the stresses that petitioner may face outside the prison system may cause him to succumb to alcohol use. (Resp't Ex. H at 2-3.) These factors constitute "some evidence" supporting the Board's decision to deny parole in consideration of the public safety. <u>See</u> <u>Sass</u>, 469 F.3d at 1129; <u>see also</u> <u>Irons</u>, 505 F.3d at 665.

This Court also notes that in <u>Biggs</u>, the Ninth Circuit expressed the concern that "over time" the Board's "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment" would "raise serious questions involving his liberty interest in parole." 334 F.3d at 916. However, as

---

[2]   Petitioner was convicted on January 21, 1993, and his parole was denied on February 2, 2005. Even with credit for 393 days of time served at the time of sentencing, it appears from the record that he had not yet served his minimum sentence at the time of the 2005 hearing. (<u>See</u> Resp't Ex. A at 1.)

discussed above, petitioner had not yet served his minimum term of fifteen years to implicate the concerns raised in Biggs.  See Irons, 505 F.3d at 661.  Thus, this case has not yet reached the point where a continued reliance on an unchanging factor such as the circumstances of the offense in denying parole has resulted in a due process violation.  Furthermore, there were factors other than the commitment offense which the Board relied on in determining that petitioner would pose a current threat to public safety if released on parole.  See supra at 8.  Accordingly, petitioner is not entitled to relief based on his claim that the Board's decision to deny parole at the February 2, 2005 hearing violated his right to due process.  See Sass, 461 F.3d at 1129; see also Irons, 505 F.3d at 664-65.

Accordingly, the state court's decision rejecting this claim was neither contrary to nor an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented.  See 28 U.S.C. § 2254(d).

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED on the merits.

DATED:  _____December 21, 2009_____        _____

JAMES WARE
United States District Judge

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\SJ.JW\HC.06\Goodman3952_denyHC-parole.wpd

# UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

STEVEN GOODMAN,

                Petitioner,

    v.

SUSAN FISHER, Warden,

                Respondent.

_____/

Case Number: CV06-03952 JW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on _____12/23/2009_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Steve Goodman H-64885
Correctional Training Facility
P. O. Box 705
Soledad, Ca 93960-1050

Dated: _____12/23/2009_____

                                 Richard W. Wieking, Clerk
                               /s/ By: Elizabeth Garcia, Deputy Clerk